# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ORLANDO JACOBS, | |
| Plaintiff, | Civil Action No. 2: 15-cv- 01254 |
| v. | United States District Judge<br>Mark R. Hornak |
| ORLANDO HARPER, WARDEN;<br>ALLEGHENY COUNTY PRISON;<br>NORA GILLESPIE, CONTRACT<br>OVERSEER; WILLIAM McKAIN,<br>COUNTY MANAGER; KEITH<br>HASTEAD, MEDICAL<br>ADMINISTRATOR; LESLIE A.<br>TRAVIS, MEDICAL ADMINISTRATOR;<br>RICH FITZGERALD, COUNTY<br>EXECUTIVE; COUNTY OF<br>ALLEGHENY; CO GROSS; AND<br>DR. MOUSSA, | United States Magistrate Judge<br>Cynthia Reed Eddy |
| Defendants. | |

## REPORT AND RECOMMENDATION

**I.  RECOMMENDATION**

Presenting pending are three motions to dismiss: (i) Motion to Dismiss filed by Leslie Travis and Keith Hastead (ECF No. 20); (ii) Motion to Dismiss filed by the County Defendants (ECF No. 27), and (iii) Motion to Dismiss filed by Dr. Moussa (ECF No. 30).

Plaintiff has not responded to the motions, and the time for responding has now passed. Therefore, in the absence of any timely response by Plaintiff, the Court will deem the motions to dismiss to be ripe for resolution. For the reasons set forth below, it is recommended that the three motions to dismiss be granted.

1

II.   REPORT

   A. Relevant and Material Facts

Plaintiff, Orlando Jacobs, is a federal prisoner currently incarcerated at the Northeast Ohio Correctional Center in Youngstown, Ohio. This lawsuit alleges that during the approximately three months that Plaintiff was confined at Allegheny County Jail,[1] Defendants were deliberately indifferent to his medical needs and that the Defendants breached their duty of due care to provide medical treatment to him.

Named as Defendants are Leslie Travis and Keith Hastead (collectively the "Medical Administrators"), Allegheny County, Rich Fitzgerald, William McKain, Warden Orlando Harper, Nora Gillespie, and Court Officer Gross (collectively the "County Defendants"), and Dr. Moussa.

According to the Complaint, on June 9, 2015, Plaintiff noticed a burning feeling in his penis. On that same day, he filed a request to staff member directed to Nora Gillespie requesting

---

[1] It appears from the federal court's docket that Plaintiff completed his term of federal imprisonment on March 19, 2012, at which time he was transferred to the State of Pennsylvania to complete his state sentence. Plaintiff was paroled by the State on August 11, 2014, and was placed at Gateway Rehabilitation Center in Braddock, Pennsylvania. Shortly thereafter, Plaintiff allegedly absconded from Gateway, and the Pennsylvania State Board of Probation and Parole issued an absconder warrant on February 18, 2015. On March 18, 2015, the U.S. Probation Office filed a petition alleging that Plaintiff violated the terms of his supervised release. The federal court issued an arrest warrant for Plaintiff based on the alleged violation of supervised release. On June 2, 2015, Plaintiff was arrested and placed in state custody at Allegheny County Jail. The federal arrest warrant was lodged against Plaintiff as a detainer, requiring the eventual delivery of Plaintiff to federal custody for resolution of the alleged violations of his federal supervision. On December 4, 2015, a hearing was held and the Court ordered that Plaintiff's term of supervised release be continued. On March 15, 2016, the U.S. Probation Office filed a second petition alleging that Plaintiff absconded from Alle Kiski Pavilion on or about February 20, 2016. Plaintiff was arrested on March 23, 2016. The U.S. Probation Office filed a Supplemental Petition alleging that Plaintiff was charged on April 1, 2016, with theft and receiving stolen property by the Arnold Police resulting from an incident which occurred on February 14, 2016. The hearing on the latest supervised release revocation petition is scheduled for September 1, 2016. *See* public docket, *United States v. Jacobs*, 93-cr-141 (W.D. Pa).

medical attention as he believed he had a sexually transmitted or infectious disease. Complaint, at ¶ 3 (ECF No. 10). The next day, Jacobs filled out a sick call slip to be seen in the medical department and also sent a request to Warden Harper, but received no reply. Jacobs contends that through August 15, 2015, he continued to send requests to Warden Harper, medical administrator Nora Gillespie, and County Manager William McKain.

On August 18, 2015, Jacobs was seen by Dr. Moussa in the Medical Department at Allegheny County Jail, who indicated he would write a prescription to "attack the 'disease.'" *Id.* at ¶ 6. Jacobs also underwent lab work including a urinalysis. Jacobs alleges that no medication was ever given to him.

Plaintiff again saw Dr. Moussa on September 2, 2015, at which time Dr. Moussa allegedly told him that he did not know what was causing Plaintiff's symptoms and told Plaintiff that if he returned to the Medical Department he would be charged for another visit. *Id*. at ¶ 7.

Presently pending are the Motion to Dismiss filed by Leslie Travis and Keith Hastead (ECF No. 20); the Motion to Dismiss filed by the County Defendants (ECF No. 27), and the Motion to Dismiss filed by Dr. Moussa (ECF No. 30), with briefs in support. The Court issued a Response / Briefing Schedule and Plaintiff was specifically advised to either file an amended complaint or a response to Defendants' motions to dismiss. Plaintiff was further advised that should he fail to comply with the Order, the Motions to Dismiss may be decided without the benefit of his response. *See* ECF Nos. 29, 32, 36, and 37. Due to Plaintiff's transfer to NEOCC, he was granted an extension of time in which to respond to the motions until June 15, 2016. To date, Plaintiff has not filed any type of responsive pleading nor has he requested an additional extension of time in which to do so.

Accordingly, the Court will analyze the Complaint on the merits, notwithstanding that Plaintiff did not file a response to the pending motions. *Ray v. Reed*, 240 F. App'x 455, 456 (3d Cir. 2007).

**B. Standard of Review for Motion to Dismiss**

1. *Pro Se Litigants*

Pro se pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520–521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or the litigant's unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley,* 141 F.2d 552, 555 (3d Cir.1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance").

In a section 1983 action, the court must liberally construe the pro se litigant's pleadings and "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247–48 (3d Cir. 1999)).[2] *See also Nami v. Fauver,* 82 F.3d 63, 65 (3d

---

[2] The Court of Appeals for the Third Circuit has explained the liberal construction of pro se pleadings, as follows:

> The federal rules do not adhere to the ancient principle that a pleading must be construed most strongly against the pleader. Nor do the federal courts require technical exactness or draw refined inferences against the pleader; rather, they make a determined effort to understand what he is attempting to set forth and to construe the pleading in his favor, whenever justice so requires. This is particularly true when a court is dealing with a complaint drawn by a layman unskilled in the law. In these cases, technical deficiencies in the complaint will be treated leniently and the entire pleading will be scrutinized to determine if any legally cognizable claim can be found within it.

4

Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting *Higgins,* 293 F.3d at 688). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. *Gibbs v. Roman,* 116 F.3d 83 (3d Cir. 1997). *See, e.g., Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir.1996) (discussing Fed.R.Civ.P. 12(b)(6) standard); *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir. 1990) (same). Notwithstanding this liberality, pro se litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See, e.g., Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378, (5th Cir. 2002).

Because Plaintiff is a pro se litigant, this Court may consider facts and make inferences where it is appropriate.

2.  *Motion to Dismiss Pursuant to Rule 12(b)(6) - The Legal Standard*

The applicable inquiry under Federal Rule of Civil Procedure 12(b)(6) is well settled. Under Federal Rule of Civil Procedure 8, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*,

---

*Lewis v. Attorney General of U.S.,* 878 F.2d 714, 722 (3d Cir. 1989) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1286, at 381-84 (1969)).

5

578 F.3d 203, 211 (3d Cir. 2009). This " 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (*quoting Twombly*, 550 U.S. at 556). Nevertheless, the court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183–84 (3d Cir. 2000), or the plaintiff's "bald assertions" or "legal conclusions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

When considering a Rule 12(b)(6) motion, the court's role is limited to determining whether a plaintiff is entitled to offer evidence in support of his claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The court does not consider whether a plaintiff will ultimately prevail. *See id*. A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

**C.    Discussion and Analysis**

1.    *The Eighth Amendment Claims - Deliberate Indifference*[3]

In accordance with the Eighth Amendment's prohibition against cruel and unusual punishment, the government is obliged "to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97, 103 (1976). "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . .

---

[3]    For purposes of analyzing Plaintiff's medical deliberate indifference claim, the legal analysis is the same whether Plaintiff was a pretrial detainee or a convicted person. The United States Court of Appeals for the Third Circuit has indicated that a pretrial detainee's right to adequate medical care should be analyzed under the well-settled standard established in *Estelle v. Gamble,* 429 U.S. 97 (1976), which provides that prison officials are required "to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir. 1999) (citing *Estelle,* 429 U.S. 97 (1976)).

proscribed by the Eighth Amendment." *Id.* at 104 (citation omitted). "[W]hether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed . . . deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* at 104–05 (citations omitted).

A medical need is "serious" if "it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro,* 834 F.2d 326, 347 (3d Cir. 1987) (internal quotation omitted). "The seriousness of an inmate's medical need may also be determined by reference to the effect of denying the particular treatment." *Id.*

The "deliberate indifference" a plaintiff must allege lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other" and is frequently equated with recklessness as that term is defined in criminal law. *Farmer v. Brennan,* 511 U.S. 825, 836–37 (1994). This standard "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients." *Inmates of Allegheny Cnty. Jail v. Pierce,* 612 F.2d 754, 762 (3d Cir. 1979). Where a prisoner has received medical care and only the adequacy of the treatment is disputed, courts are often reluctant to second guess professional medical judgment. *See id*.

However, deliberate indifference can be manifested by an intentional refusal to provide care, delayed medical treatment, and the denial of prescribed medical treatment. *See Durmer,* 991 F.2d at 64; *Giles v. Kearney,* 571 F.3d 318, 330 (3d Cir. 2009) ("Deliberate indifference may be shown by intentionally denying or delaying medical care.").

Plaintiff contends that Defendants denied or intentionally delayed his reasonable requests for medical treatment.

Defendants Travis and Hastead contend that they should be dismissed from this lawsuit because aside from naming them in the caption and designating them as medical administrators, Plaintiff has not alleged or implicated their personal involvement in any medical care or attention he received or that he claims he should have received. The Court agrees with Defendants.

Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. *Robinson v. City of Pittsburgh*, 120 F.3d 1286 (3d Cir. 1997). Even with the liberal construction afforded to pro se pleadings, Plaintiff's cursory allegation against Travis and Hastead fails to meet the minimal standard of Rule 8(a).[4] Accordingly, the Court recommends that the motion to dismiss filed by defendants Travis and Hastead be granted and these defendants be dismissed from this lawsuit.

Like Defendants Travis and Hastead, County Defendants Harper, McKain, Fitzgerald, Gillespie, and Gross contend they should be dismissed from this lawsuit as the complaint does not allege that they have personal involvement in the alleged constitutional wrongs. The Court agrees with the County Defendants.

The complaint makes broad claims that Plaintiff notified Harper, McKain, Fitzgerald and Gillespie that he was requesting medical treatment. Plaintiff's only allegation against Defendant Gross is that after his last visit with Dr. Moussa, Defendant Gross told him to get out of the

---

[4] The only reference to Travis and Hastead in the body of the complaint is in Paragraph 11: "Defendants Harper, Gillespie, McKain, <u>Hastead, Travis</u>, Fitzgerald, CO Gross and Dr. Moussa acted under color of state law as prison officials to deny Plaintiff a PA state citizen his constitutional right to be free from cruel and unusual punishment in violation of the 8th Amendment." (emphasis added).

doctor's office and that "we run things our way and <u>you</u> aint talking about this subject no more." Complaint, at ¶ 8.

The complaint reflects that Plaintiff was seen by Dr. Moussa and the general rule is that "[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands" and "absent a reason to believe [or actual knowledge] that prison doctors or their assistants are mistreating [or not treating] a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). Thus, the plaintiff "bears the burden of proving [and hence pleading] facts supporting the defendants' mental states." *Id.*

In order for non-medical personnel to be found liable for deliberate indifference, the plaintiff must show that the personnel "possessed actual knowledge or a reason to believe that 'prison doctors or their assistants [were] mistreating [or not treating]' " the prisoner. *Thomas v. Dragovich*, 142 F. App'x 33, 39 (3d Cir. 2005) (citing *Spruill*, 372 F.3d at 236). Plaintiff makes no such allegations in his complaint. Therefore, it is recommended that Plaintiff's claims against Harper, McKain, Fitzgerald, Gillespie, and Gross be dismissed.

Furthermore, the County Defendants argue that the County of Allegheny should be dismissed because Plaintiff makes no allegation that the alleged constitutional violations were caused pursuant to a governmental policy or custom. *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 691 (1978). The Court agrees. Because the complaint fails to adequately allege that any policy or custom of Allegheny County violates a constitutional right of Plaintiff, it is recommended that the County Defendants' motion to dismiss be granted and Allegheny County be dismissed.

9

Plaintiff's claims against Dr. Moussa likewise fail. The Complaint clearly reflects that Plaintiff was seen by Dr. Moussa on at least two occasions for the same medical condition and that tests were performed as a part of Dr. Moussa's evaluation. While, Plaintiff has established that he is dissatisfied with the treatment he received, he has not established that Dr. Moussa was deliberately indifferent to his medical needs. Accordingly, the Court recommends that the motion to dismiss filed by Dr. Moussa be granted.

2. *State Law Negligence Claims*

In Count II of his complaint, Plaintiff alleges defendants were negligent in that they breached their "duty of due care to treat him for any medical conditions to keep him from harm." Complaint, at ¶ 15. Pursuant to Pennsylvania Rule of Civil Procedure 1042.3, in a medical negligence case, a plaintiff is required to file a certificate of merit attesting to at least one of the following:

> (1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or
>
> (2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or
>
> (3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

Pa. R. Civ. P. 1042.3(a). The certificate of merit must be filed with the complaint or within sixty days after the filing of a complaint. As the time for filing an appropriate certificate of merit has long passed, Plaintiff's negligence claims should be dismissed.[5]

---

[5] While Plaintiff's failure to comply with Rule 1042.3 requires dismissal of the negligence claims, the sanction imposed under state law for violation of this rule, entry of a non pros by the

## III. CONCLUSION

For the reasons stated above, it is respectfully recommended that the Motion to Dismiss filed by Leslie Travis and Keith Hastead (ECF No. 20) be granted; (ii) the Motion to Dismiss filed by the County Defendants (ECF No. 27) be granted, and (iii) the Motion to Dismiss filed by Dr. Moussa (ECF No. 30) be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(D)(2) of the Local Rules for Magistrates Judges, the parties are allowed fourteen (14) days after service of this Report and Recommendation, to file Objections to this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days after date of service to respond to the objections. Failure to file Objections will waive the right to appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

/s Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

Dated: July 29, 2016

---

Prothonotary, has no precise analogue in the federal courts. Courts have stated that the federal equivalent of such a procedure is a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Rogan v. County of Lawrence*, No. 12-1375, 2013 WL 4511316, at *5 (W.D. Pa. Aug. 23, 2013) (citing *Perez v. Griffin*, 304 F. App'x 72, 74 (3d Cir. 2008)).

cc:     ORLANDO JACOBS
04927-068
NEOCC
2240 Hubbard Road
Youngstown, OH 44505
(via U.S. First Class Mail)

Dennis R. Biondo , Jr**.**
Allegheny County Law Department
(via ECF electronic notification)

Kathryn M. Kenyon
Meyer, Unkovic & Scott LLP
(via ECF electronic notification)

Cassidy L. Neal
Mats Baum O'Connor P.C.
(via ECF electronic notification)